Mr. Blando. May it please the court and good morning. My name is Mark Blando of Eklund Appellants in this matter. We seek reversal of the decision of the court below on three separate grounds based on the three alternative grounds on which that court ruled against the plaintiffs. And those issues are, number one, whether the material change of position doctrine still applies after the Franconian decision by the Supreme Court. Number two, if so, whether Mrs. Garner's actions here qualified as such a material change of position. And number three, again, if so, at what point in time that change in position was effective for purposes of accrual of the statute of limitations. But she essentially bailed out more than six years before suit, right? I would not agree with that, Your Honor. She took action to mitigate her damages. And once that mitigation was completed, she was no longer performing the contract. She brought suit within six years of that point. So she did the best she could under the situation where the government repudiated her contract, took away the right to prepay, basically devalued her property to the extent that it had barely any of the original value it would have under the original contract terms. But she sold her interest more than six months before. She sold the property and completed the sale less than six years before she filed suit. That's your argument? Absolutely. That the completion of the agreement is the date that counts? Absolutely, Your Honor, because there's so much that has to happen between the date that that sale agreement is signed and the date that the closing actually occurs. Everything points to the closing. If you look at this agency's regulations, which we have in the addendum at pages one through five, there are a plethora of things that have to happen between the time of the sale agreement and the closing. They have to get... Under your argument, would it be that you have to look at the contract each time to determine whether entering into the contract or closing would be the material change? That certainly would be a factor, Your Honor. But I think the biggest thing to look at and the easiest rule to apply in this case is when did the party's performance stop? Remember, this is a contract that the parties, the government, and the original owners had been performing for 20 years up until the time when the sale occurred. But that's not what the law says. What the law says is you look at when there was a material change and reliance on the government's decision to repudiate, right? Yes, Your Honor. The case law says you look at when the change occurred. In here, our argument is, well, when did the change actually occur? I think it's your hardest position. I'm really trying to dig in to when the change occurred. When is it that a material change occurred and reliance on the repudiation? Is it when there was an entrance into the contract, when the contract was formed for the sale of the property, or when it was closed? One of the arguments that could be made for why it should be when the contract was entered into is because when the material change occurs, at that point, the repudiating party could no longer rescind its repudiation, right? It seems a little odd under the way you're mentioning to the contract, the government could, at that point, still repudiate, I mean, rescind its repudiation. Right. Your Honor, we would disagree with the notion that the government could no longer retract their repudiation. The way they retract for the Franconia Supreme Court decision is by repealing the legislation. We say, absolutely, the government could have retracted. They could have repealed OLIPA after the point that we entered into the sale agreement. You can bet if Ms. Garner had filed suit at that point in time, the government would say, well, why are you suing on the prepayment right? We've already repealed the legislation. You haven't suffered a loss. Again, I think the fact that the parties are still performing the contract is a key difference here. There's never been, in all of the material change of position cases that have been decided, there's never been one that found a change to occur while the parties are still performing. What is the continued performance? Payment of interest? A number of things. They own the property. They are operating it. They are responsible for the management of the property, the care of it, the care of the tenants, the submission of budgets, compliance with all kinds of government regulations in the 3560 rules. To your point, absolutely, they're responsible for paying the mortgage. At the time they signed that sale agreement, they are still paying the mortgage every month. The government is accepting those payments. When does the change occur? Only upon the closing. Everything points to the closing. Everything changes at the closing. That's the point at which the property is actually transferred. If you look at the agency's regs, they talk about what has to happen before the transfer. That transfer that they're pointing to is the closing. Again, before then there's environmental reviews, civil rights reviews, capital needs assessment, appraisals that has to be done. Even under the sale agreement, every party to that sale agreement has the right to void it one way or another. Even on the seller's part, they need approval of their limited partners before the transfer can occur. The buyer has a whole list of due diligence items they have to do. It's all subject to the consent of the agency, which again is where all those other requirements come into play. What law do you have to help us understand precedent on what is a material change in this context? The case law has consistently dealt with the question of election. At what point are you making an election to treat the repudiation as a breach? In terms of the material change, it's when do you finally close the door? What is the final act? Where is your final act? I think one of these treatises you mentioned does have the word final in it, but I haven't seen a whole lot of cases that emphasize final like you are here today. The truth is it probably doesn't matter in a lot of cases. Whether it's entering the contract or closing, it doesn't matter. If there's no statute of limitations or any other fact pattern, it really doesn't matter in probably most cases which event is the trigger. I think you're absolutely right, Your Honor. I think that's what you're seeing in so many cases. There's no question of accrual. It's just a question of through this course of how do you sign the contract? Is it when you actually deliver the grain? Is it when the other party accepts the grain? The other cases don't have to specify exactly which date along that path it is because there's no statute of limitations issue here. I think we have to look at what makes the most sense, what's the most logical rule supported by the case law to say when that change really occurs. Remember, this owner, Ms. Garner, didn't suffer a loss. That loss was not realized until the owner finally changed hands. That's when, per the closing statement, she received the cash to owner as it says on the HUD-1 statement. Now she suffered a loss. Only now is she no longer performing under that contract with the government. Only now is she no longer paying the mortgage. Now the buyer is the owner of the property and the one who's responsible on the mortgage. Everything in all of these regulations throughout the sale agreement, everything points to the closing. What is the impact of the material change? Do I understand correctly that once there's a material change, then the repudiating party can no longer retract its repudiation? That's absolutely correct. That's a rule that both parties agree on for the restatement and all the other authorities. That's where you get the phrase, closing the door to repentance. Once you have taken that change, and really this is about the parameters of election, which Franconia talked about. There are really at least two ways that you can elect to change your position. One is by filing suit. The other, and this is right along the lines of what was held by the trial court in Franconia after the remand, where the trial court judge said this notion of election means you could change position. That's exactly what Ms. Garner did here by mitigating her damages. I think that's really another important point here is we don't want to discourage parties from mitigating their damages. That's exactly the course of action, the prudent course of action that Ms. Garner took as soon as she reached the 20-year anniversary when she otherwise would have been able to prepay but for the repudiation. She said, I know I can't get out. I've talked to people. I know that filing a prepayment request is going to do me no good because I know I still can't get out. That's what the law says. This wasn't a conditional sale. It's not like buying a put on the stock market and you're still owning the stock. This was a sale of the property, right? The buyer was the beneficial owner. The buyer became the owner upon the closing. That's correct. That's why the closing is so important. Wasn't the buyer the beneficial owner at the time of the contract? I don't think so, Your Honor. The sale agreement is just a commitment to go through a process that may or may not end up in a closing where the property is actually transferred. That's what makes real estate deals different from other contracts where maybe you agree to sell your wine to someone else or buy someone else's oats when the other party repudiates the contract. What were some of the contingencies in the contract such that the seller could not get out of the contract? Many contingencies in the sale agreement, which is in appendix page 39, number one, government approval of the sale, which neither party has any control over. That's where you get into those regulations that talk about there's 14 different conditions on the government's approval and five different submissions and all those regulations talk about here's the process we're going to go through and if all these conditions are met, only if, and only if all these 14 submissions are made, then we will close on the sale and then the actual assumption of the mortgage and transfer of the property will occur. They actually use the term sale or transfer and point to the closing as the date that that sale or transfer will occur. If the change is the sale, the change of position can occur until the sale actually occurs and both the sale agreement and the regs point to the closing as the date of sale. In terms of the other conditions you asked about, I mentioned the government approval. There's the requirement for the seller to get the consent of all the limited partners. Remember, these are limited partnerships. That's a good example of a condition that's actually in the control of the seller who, say the law had changed using your hypothetical, Ms. Garner would have to write to her limited partners and say, the government has repealed the legislation. We have the sale agreement, but we should probably try to get out of it. You can approve it if you want, but the LPs could also disapprove. Did you look in other analogous areas of the law, maybe even in contract law for just generally what a material change would be outside of this particular context of the law, like outside of repudiation? I would think that the term material change would be something that's a legal term that is recognized in other areas. Yes, Your Honor. If you look at the long, long string site in our reply brief at pages five through six, those are all cases that discuss the change of position doctrine, and they all deal with situations like I've described where the other party repudiates, and so you buy the wine from someone else. You sell the oats to someone else. In terms of accrual- I looked at those cases. My problem was that none of them really turned on the unique question presented here of whether it's when you enter the contract or when there's a closing. Right. I think that's correct, Your Honor. The change of position cases haven't needed to go that far, but I think nonetheless, given the nature of this transaction, given all the contingencies in the sale agreement, and really just at the bottom of the fact that performance by the parties to the original contract, Ms. Garner and the government continued until the date of the closing, and you can't have a change of position with respect to a contract until- What is your case to support that idea, that you couldn't have a change in position while you're continuing to have performance? Well, because if you look at every single one of the cases where there was found to be a change of position, the performance either has not occurred yet or- Do you have any cases that expressly say what you've said, or is it just the facts in those cases happen to turn out that way? There's no case that's ever held otherwise, and that's the only workable and logical rule. I'll give you another example. What if the sale fell through? What if you say the purchase agreement marked the change of position, and then you go through this process, and everything that could go wrong, one of those umpteen things goes wrong. The sale falls through, and now there's been no change at all. You'd actually have a contract claim that has accrued, and then somehow unaccrued. It can only accrue once, and that accrual needs to happen when the change occurs. Let's hear from the government, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Roach. Good morning, Your Honor. I'm Matthew Roach for the United States. So is the government's position that this claimant could have brought this action under under the articulation of the rule that the Supreme Court gave in Franconia? The court said that with these specific categories of plaintiffs that fall under this program in the Section 515 loans, that once the government had repudiated through a LIPA, to have a breach you have two options, and that is to await performance, and the government doesn't fulfill its duty to accept a prepayment request, or to sue and to treat the repudiation as a breach through the lawsuit. And if there's never a closing, what happens? If there's never a closing, to the extent that that rule, our interpretation and the trial court's interpretation of Franconia governs, then it's immaterial because you wouldn't have a change of position that could be an election for placing a government breach. So how can the statute start to run until the closing? There would be no claim, because the rights to bring, to assert that claim were transferred to the buyer, if I'm understanding your question correctly. Well, I'm really trying to understand. There's enough of a gap, suit was filed in the brick of time, if the date is the closing date, and yet if the statute has already been running before then, then they should have been able, without a lot of contingencies, to bring suit during that period before closing, if closing didn't matter. Well, if the rule of Franconia doesn't preclude this, doesn't preclude the material change... Franconia didn't deal with this issue, as I recall. If the plaintiffs are permitted to elect to treat the government's repudiation as a breach through a change of position, that election occurred when they entered into the sales contracts, and that's for a very specific reason, and that is that when they entered into the sales contracts, they warranted, as part of their warranties, that they were not going to make a prepayment request, they were going to continue to operate the apartment complexes under this program up until the date of closing, and so there was no opportunity for the government to retract its repudiation or to accept a performance, and that's Appendix 48. So how can the statute be running? This is what bothers me. I agree, there's no opportunity because these final steps haven't been taken, so how can the statute of limitations be running against them during that period? Because entering into that sales contract, that transaction, which gave rights to the buyer and the obligations to each of the partnerships, to go up to make the apartment complexes available for inspection, all those things, those duties that you have to do when you're selling your home, after you enter into the contract but before closing, they still had to carry those out. So that constitutes, that is the type of thing that's a change of position. If they had not done that then, the buyer could hold them liable for breach of contract. How do you respond to Mr. Blando's point that until there's closing, it's not final? At that point, the contract could fall through, and what are you going to have, a breach of contract claim, and then suddenly no breach of contract claim anymore? So what's your response to that point? It would still constitute, even if the closing fell through, they still entered into an agreement, and that still constitutes a change of position by itself. They no longer have a change in position. They changed their position, and even if the sales contract falls through, that still doesn't change the fact that they'd entered into a contract in reliance on the government's repudiation. At that point, they have six years to bring a claim for breach of contract. They did so outside one day too late. Your opposing counsel says there were 14 points, sounds like Woodrow Wilson's 14 points, 14 conditions that had to have been fulfilled. Were those merely ministerial, or did they suggest that the contract was not a done deal until it was closed? No. Yes, there are conditions, and let's say an example of a condition that was offered by the opposing counsel was you had to go to the limited partners and get their approval. What if they don't approve and it falls through because of that? Well, that assumes they still had an obligation, the duty of good faith and fair dealing, to make an effort to obtain their approval. If they just sat down and didn't even talk about this with the limited partners, done nothing, and then said, oh, well, that condition isn't satisfied and so we're out of the sales contract and no harm, no foul. No. The union street, the other party could still bring an action for either money damages or specific performance on that sales contract.  Treating the closing as the material change of position, unlike any of the other cases that were cited in the appellant's briefs and in the reply brief, none of them involved a situation in which the non-repudiating party went to the repudiating party and asked for their assistance and permission to cover their loss, to enter into the cover transaction. Here, the non-repudiating party, the appellants, actually went to the agency. They asked for the agency's approval of the sales contract and it was obtained. They asked for approval of the assumption and transfers and it was obtained. And they then got a loan forgiven. Their loan debt was discharged by $1.2 million, calculating, assuming all three properties. So there's never been a case, certainly none of the ones that were cited by the appellants, in which the repudiating party is a party to the transaction that constitutes a breach of contract or a change of position that would be a breach of contract. I think it makes it even stronger because clearly not only was there a material change in reliance on the repudiation, but also it was communicated to the repudiating party. Is that what you're saying? That it would not be. You're saying it's even stronger than the other cases? It's a completely different situation, right. It's not a situation where the repudiating party is asked essentially to place itself in breach by cooperating with the non-repudiating party. The government here was a party to all of these transactions except for entering into the sales contracts. That was the only separate deal, separate agreement that was entered into in which the government didn't have any control. They didn't form the contract. They approved it, but they were not a party to that contract. In everything else, the government was involved. They went to the table. They negotiated in good faith with the appellants here. And then six years later, the appellants are now saying, oh, by the way, that deal that you bid with us, that was really a breach of contract. It just doesn't make sense. If this exception to the rule to Franconia applies, then the only way it could apply as a trial court determined is through the sales contracts. And that would render their claim untimely. And Franconia dealt with it on a takings theory, did it not? Franconia, I believe Franconia remanded the takings to the trial court for an adjudication. And so here, there is the takings claim, but because that takings claim is predicated on remedies and rights flow out of the contract, and so you have a contract right, you don't really have a takings claim in that circumstance. Some of the cases, and also Williston, refer to all that's required to close the door to repentance is definite action indicating that the anticipatory breach has been accepted as final. So what about this emphasis on the word final that we find at least in some of the treatises that emphasize that, and how does that impact your argument? You're saying it has to be just entry of this contract that could fall through is enough, but how is that final? It's final because it's an action, it's a separate action that doesn't involve the repudiating party. They entered into a sales contract, that contract created rights and obligations that are separate from the contract that was repudiated here. Once that was done, it doesn't take much to constitute a change of position. In fact, if you look at the case of Rome v. Hearst, that quoted the Hoxter case from England, and it said that the rule is if the injured party, once there's a repudiation, is at liberty to seek service under another employer. In the Hoxter case, I think it was an employment contract that had been repudiated, and so they said once there's a repudiation, you can go seek service. You don't have to actually enter into a final other contract or final other agreement. Just seeking the service, seeking that would constitute a change of position. So the point being that the threshold to change position is very, very low, and that's consistent with the other statement in Williston that says if you want to notify, you can place the other party in breach just by saying, I am holding you in breach and sending them a letter or some kind of notification. It doesn't take much. And it would be, it's final because had the government attempted to, or I'm sorry, it was final once again entering into the sales contract because the party, the petitioner said no, we're not going to, they warranted that they would not attempt to prepay. So they said, we are not going to try and enforce our rights. What is the case that you just cited? What's the name of that one? And could you give me, do you have a site for it? That was, sorry, it's the Rome case. I have it here. It is 20 Supreme Court 780, and the court, I believe it's 783. Okay. Anymore questions for Mr. Roche? No. Anymore questions? Anything else you need to tell us? No, thank you, Your Honor. We would just ask that the court affirm the trial court. Thank you, Mr. Roche. Mr. Roche mentioned the Hodgster case, which is the original, the case from England that actually started the whole theory of anticipatory repudiation. And it's not correct that just the idea of seeking services from someone else constituted the change of position. The party in that case actually did enter into services with someone else. And that's a good example talking about the case analogs where it was actually when they made the decision, when it was final, that they took employment with someone else, that it was a change of position. In this case, there was no change until the sale was final. And so the Hodgster case and the other cases involving change of position fully support our interpretation of the doctrine that you can't have a change until you take that definitive action showing that the door to repentance has been closed. And the Hodgster case, in turn, was construed in the Rome case and the Rome case is what was cited in the Franconia case. So all of this law leads up to the decision on Franconia and what really constitutes an election to treat a repudiation as a breach. In terms of the regulations, I want it to be even more specific. If you look at 7 CFR 3560.406, section B talks about the agency consent requirements and says that agency consent must be obtained prior to an ownership transfer or sale. And then, again, in subsection C of that same part, it states that all these things have to occur at least 45 days prior to the proposed ownership transfer or sale date. And the regs also make clear that that sale date is the closing. So there's no agency consent, there's no transfer allowed until that closing occurs. And really, that's just the nature of these programs that the owner's choices are very much limited. The whole reason for this case at the get-go is that the government repudiated the right to prepay, leaving the owner with very few options. And the only way an owner like Ms. Garner can rid herself of these properties is to find an owner who will agree to take over the restrictions, which is exactly why it was such a fire sale. She had to take such an extreme loss upon that sale. And so the fact that she's still obligated to the government only reflects the fact that she's locked into this program and therefore continuing to perform, therefore not able to change her position until that new buyer finally steps in and takes over those loan obligations, which again occurs at the closing. So I really think when we look at this case, we need to think about what did Ms. Garner do wrong here? If you take the classic case of we have a contract and you agree to buy my harvest of oats, but you repudiate the contract, so I find someone else, I complete that sale. Let's say I lost $10,000 on that resale. Of course, I, as the victim of the repudiation, have the right to go to court and seek recovery of my loss. And that's no different from what Ms. Garner did here. She got rid of the property after the government's repudiation, and the only way that she could step away from it by finding someone else to take over, she went through the process and once that sale was completed and closed, her claim at that point accrued and she did file suit within six years of that point. And therefore, owners like Ms. Garner who have done the right thing, who have mitigated their damages, who have reduced the loss for which the government is responsible, should not be penalized with having forfeited their Thank you, Mr. Blandin. Thank you both. The case is taken under submission.